DANIEL J. MULLER, SBN 193396
dmuller@venturahersey.com
VENTURA HERSEY & MULLER, LLP
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023

Daniel O. Herrera (*pro hac vice* anticipated)
Nickolas J. Hagman (*pro hac vice* anticipated)
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL HOWARD, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GUARDANT HEALTH, INC.,<br><br>Defendant. | Case No. 3:24-cv-3317<br><br><br>**JURY TRIAL DEMANDED** |

### CLASS ACTION COMPLAINT

Plaintiff Paul Howard ("Plaintiff"), individually, and on behalf of all others similarly situated, brings this action against Guardant Health ("Guardant or "Defendant"). Plaintiff brings this action by and through his attorneys, and allege, based upon personal knowledge as to their own actions, and based upon information and belief and reasonable investigation by their counsel as to all other matters, as follows.

# I.    **INTRODUCTION**

1.      Guardant is a biotechnology company and lab that specializes in developing blood tests for cancer screening and detection. As part of its business, Guardant performs cancer-screening tests on samples that are provided by physicians and hospitals.

2.      As a necessary part of its operations, Guardant collects, maintains, and stores highly sensitive personal and medical information belonging to its patients, including, but not limited to their full names, dates of birth ("personally identifying information" or "PII"), information regarding medical treatment, diagnosis, test results, prescriptions, medical record numbers, health insurance information, and other protected health information (collectively, "private health information" or "PHI") (PII and PHI collectively, "Private Information").

3.      Guardant recently became aware that a file containing patients' Private Information, including samples collected in late 2019 and 2020, was made publicly available online. Guardant's subsequent investigation revealed that a Guardant employee inadvertently transferred the file to the publicly available platform on or around October of 2020 (the "Data Breach").

4.      On March 4, 2024, Guardant determined that unidentified third parties had copied the file on at least one occasion between September 8, 2023, and February 28, 2024.

5.      On May 3, 2024, Guardant sent a notice to individuals whose information was accessed in the Data Breach.

6.      Because Guardant stored and handled Plaintiff's and Class members' highly-sensitive Private Information, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data.

7.      Ultimately, Guardant failed to fulfill its obligation to safeguard this information, as unauthorized third parties were able to access and copy the file and patient information thereon. The Data Breach—and the successful copying of the file by unauthorized third parties—were the direct, proximate, and foreseeable results of multiple failings on the part of Guardant.

8.      The Data Breach occurred because Guardant failed to implement reasonable security protections to safeguard its information systems and databases. Thereafter, Guardant

failed to timely detect this Data Breach until ***three years and seven months*** after the file was made publicly available. Moreover, before the Data Breach occurred, Guardant failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been made aware of this fact, they would have never provided such information to Guardant.

9.    Guardant's subsequent handling of the breach was also deficient.

10.    Guardant's failure to ameliorate the effects of this data breach with complimentary credit monitoring is woefully inadequate. Much of the Private Information that was stolen is immutable and credit monitoring is paramount in the face of a life-long heightened risk of identity theft.

11.    As a result of Guardant's negligent, reckless, intentional, and/or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiff and Class members suffered injuries, but not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges;

- Time needed to investigate, correct and resolve unauthorized access to their accounts; time needed to deal with spam messages and e-mails received subsequent to the Data Breach;

- Charges and fees associated with fraudulent charges on their accounts; and

- The continued and increased risk of compromise to their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect their Private Information.

12.    Accordingly, Plaintiff brings this action on behalf of all those similarly situated to seek relief for the consequences of Defendant's failure to reasonably safeguard Plaintiff's and

1   Class members' Private Information; its failure to reasonably provide timely notification to

2   Plaintiff and Class members that their Private Information had been compromised; and for

3   Defendant's failure to inform Plaintiff and Class members concerning the status, safety, location,

4   access, and protection of their Private Information.

5                                    II.      **PARTIES**

6          **Plaintiff Paul Howard**

7          13.     Plaintiff Howard is a resident and citizen of Binghamton, New York. Plaintiff

8   Howard's oncologist uses Guardant for Plaintiff Howard's oncology related treatment and care.

9   Plaintiff Howard received Defendant's Data Breach Notice.

10         **Defendant Guardant Health, Inc.**

11         14.     The Guardant is a Delaware corporation with its principal place of business located

12  at 3100 Hanover Street, Palo Alto, California. Defendant conducts business in this District and

13  throughout State of California.

14                         III.     **JURISDICTION AND VENUE**

15         15.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act

16  of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in

17  controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and at

18  least one Class member is a citizen of a state different from Defendant. This Court also has

19  supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form

20  part of the same case or controversy.

21         16.     This Court has personal jurisdiction over Defendant because Defendant is

22  headquartered in this District.

23         17.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial

24  part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in

25  this District and because Defendant resides in this District.

26

27

28

## IV.    FACTUAL ALLEGATIONS

**A.    Guardant– Background**

18.    Guardant is a biotechnology company and lab that specializes in developing blood tests for cancer screening and detection. As part of its business, Guardant performs cancer-screening tests on samples that are provided by physicians and hospitals.

19.    As part of its normal operations, Guardant collects, maintains, and stores large volumes of Private Information belonging to its current and former patients.

20.     Guardant failed to implement necessary data security safeguards at the time of the Data Breach. This failure resulted in unauthorized third parties accessing and copying of Plaintiff's and Class Members' Private Information.

21.    Plaintiff and Class members made their Private Information available to Guardant with the reasonable expectation that any entity with access to this information would keep that sensitive and personal information confidential and secure from illegal and unauthorized access. They similarly expected that, in the event of any unauthorized access, these entities would provide them with prompt and accurate notice.

22.    This expectation was objectively reasonable and based on an obligation imposed on Guardant by statute, regulations, industrial custom, and standards of general due care.

23.    Unfortunately for Plaintiff and Class members, Guardant failed to carry out its duty to safeguard sensitive Private Information and provide adequate data security. As a result, it failed to protect Plaintiff and Class members from having their Private Information accessed and stolen during the Data Breach.

**B.    The Data Breach**

24.    According to Defendants' public statements, on or around October of 2020, a Guardant employee inadvertently transferred a file containing current and former patients' Private Information to a publicly accessible online platform.

25.    On March 4, 2024, Guardant determined based on a review of activity records on the online platform that unidentified third parties had copied the file containing current and former

patients' Private Information on at least one occassion between September 8, 2023, and February 28, 2024.

26.    On May 3, 2024, Guardant sent a notice to individuals whose information was accessed in the Data Breach. Accordingly, Guardant failed to notify Plaintiff and the Class until over three years after the Data Breach that their Private Information was posted publicly online.

27.    Guardant estimates that the Private Information belonging to at least 9,309 individuals was compromised in this incident.

**C.    Guardant's Many Failures Both Prior to and Following the Breach**

28.    Defendant collects and maintains vast quantities of Private Information belonging to Plaintiff and Class members as part of its normal operations. Because Guardant stored and handled Plaintiff's and Class members' highly-sensitive Private Information, it had a duty and obligation to safeguard this information and prevent unauthorized third parties from accessing this data. The Data Breach occurred as direct, proximate, and foreseeable results of multiple failings on the part of Defendant.

29.    First, Defendant inexcusably failed to implement reasonable security protections to safeguard highly sensitive Private Information concerning current and former patients.

30.    Second, Defendant failed to timely detect this data breach, only finally becoming aware of the breach years after the Private Information was posted online, and well after unauthorized actors were able to access and copy the information. This delayed detection provided these unauthorized actors with more than three years to access and misuse the sensitive Private Information belonging to Plaintiff and the Class.

31.    Third, Defendant failed to inform the public that its data security practices were deficient and inadequate. Had Plaintiff and Class members been aware that Defendant did not have adequate safeguards in place to protect such sensitive Private Information, they would have never provided such information to Defendant.

32.    In addition to the failures that lead to the successful breach, Defendant's failings in handling the breach and responding to the incident exacerbated the resulting harm to the Plaintiff and Class members.

33.     Defendant's delay in informing victims of the Data Breach that their Private Information was compromised virtually ensured that the cybercriminals who acquired this Private Information could monetize, misuse and/or disseminate that Private Information before the Plaintiff and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

34.     Additionally Defendant's has not attempted to ameliorate the effects of this data breach. Plaintiff's and Class members' Private Information was accessed and acquired by cybercriminals for the express purpose of misusing the data. As a consequence, they face the real, immediate, and likely danger of identity theft and misuse of their Private Information. And this can, and in some circumstances already has, caused irreparable harm to their personal, financial, reputational, and future well-being. This harm is even more acute because much of the stolen Private Information, such as healthcare data, is immutable.

35.     In short, Defendant's myriad failures, including the failure to timely detect an intrusion and failure to timely notify Plaintiff and Class members that their personal and medical information had been stolen due to Defendant's security failures, allowed unauthorized individuals to access, misappropriate, and misuse Plaintiff's and Class members' Private Information for over three years before Defendant finally granted victims the opportunity to take proactive steps to defend themselves and mitigate the near- and long-term consequences of the Data Breach.

**D.     Data Breaches Pose Significant Threats**

36.     Data breaches have become a constant threat that, without adequate safeguards, can expose personal data to malicious actors. It is well known that PII and PHI is an invaluable commodity and a frequent target of hackers.

37.     In 2022, the Identity Theft Resource Center's Annual End-of-Year Data Breach Report listed 1,802 total compromises involving 422,143,312 victims for 2022, which was just 50 compromises short of the current record set in 2021.[1] The HIPAA Journal's 2022 Healthcare Data

---

[1] *2022 End of Year Data Breach Report*, Identity Theft Resource Center (January 25, 2023), available at: https://www.idtheftcenter.org/publication/2022-data-breach-report/?utm_source=press+release&utm_medium=web&utm_campaign=2022+Data+Breach+Report.

Breach Report reported 707 compromises involving healthcare data, which is just 8 shy of the record of 715 set in 2021 and still double that of the number of similar such compromises in 2017 and triple the number of compromises in 2012.[2]

38.    Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, confirms that the number of data breaches has been steadily increasing since it began a survey of data compromises in 2005 with 157 compromises reported that year, to a peak of 1,862 in 2021, to 2022's total of 1,802.[3] The number of impacted individuals has also risen precipitously from approximately 318 million in 2015 to 422 million in 2022, which is an increase of nearly 50%.[4]



[2] *2022 Healthcare Data Breach Report*, The HIPAA Journal (January 24, 2023), available at: https://www.hipaajournal.com/2022-healthcare-data-breach-report/.
[3] *Annual Number of Data Breaches and Exposed Records in the United States from 2005 to 2022*, Statista, available at: https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-united-states-by-number-of-breaches-and-records-exposed/.
[4] *Id.*

8

39.    This stolen PII is then routinely traded on dark web black markets as a simple commodity, with Social Security numbers being so ubiquitous to be sold at as little as $2.99 apiece and passports retailing for as little as $15 apiece.[5]

40.    In addition, the severity of the consequences of a compromised PII and PHI belies the ubiquity of stolen information on the dark web. Criminals and other unsavory groups can fraudulently take out loans under the victims' name, open new lines of credit, and cause other serious financial difficulties for victims.[6]

41.    The most sought after and expensive information on the dark web are stolen medical records, which command prices from $250 to $1,000 each.[7] Medical records are considered the most valuable because unlike credit cards, which can easily be canceled, and Social Security numbers, which can be changed, medical records contain "a treasure trove of unalterable data points, such as a patient's medical and behavioral health history and demographics, as well as their health insurance and contact information."[8] With this bounty of ill-gotten information, cybercriminals can steal victims' public and insurance benefits and bill medical charges to victims' accounts.[9] Cybercriminals can also change the victims' medical records, which can lead to misdiagnosis or mistreatment when the victims seek medical treatment.[10] Victims of medical identity theft could even face prosecution for drug offenses when cybercriminals use their stolen information to purchase prescriptions for sale in the drug trade.[11]

---

[5] *What is your identity worth on the dark web?* Cybernews (September 28, 2021), available at: https://cybernews.com/security/whats-your-identity-worth-on-dark-web/.

[6] United States Social Security Administration, *Identity Theft and Your Social Security Number*, United States Social Security Administration (July 2021), available at: https://www.ssa.gov/pubs/EN-05-10064.pdf.

[7] Paul Nadrag, Capsule Technologies*, Industry Voices—Forget credit card numbers. Medical records are the hottest items on the dark web*, Fierce Healthcare (January 26, 2021), available at: https://www.fiercehealthcare.com/hospitals/industry-voices-forget-credit-card-numbers-medical-records-are-hottest-items-dark-web.

[8] *Id.*

[9] *Medical Identity Theft in the New Age of Virtual Healthcare*, IDX (March 15, 2021), available at https://www.idx.us/knowledge-center/medical-identity-theft-in-the-new-age-of-virtual-healthcare. *See also* Michelle Andrews, *The Rise of Medical Identity Theft*, Consumer Reports (August 25, 2016), available at https://www.consumerreports.org/health/medical-identity-theft-a1699327549/.

[10] *Id.*

[11] *Id.*

42.     The wrongful use of compromised medical information is known as medical identity theft, and the damage resulting from medical identity theft is routinely far more serious than the harm resulting from the theft of simple PII. Victims of medical identity theft spend an average of $13,500 to resolve problems arising from medical identity theft and there are currently no laws limiting a consumer's liability for fraudulent medical debt (in contrast, a consumer's liability for fraudulent credit card charges is capped at $50).[12] It is also "considerably harder" to reverse the damage from the aforementioned consequences of medical identity theft.[13]

43.     Instances of medical identity theft have grown exponentially over the years from approximately 6,800 cases in 2017 to just shy of 43,000 in 2021, which represents a seven-fold increase in the crime.[14]

44.     In light of the dozens of high-profile health and medical information data breaches that have been reported in recent years, entities like Defendant charged with maintaining and securing patient PII should know the importance of protecting that information from unauthorized disclosure. Indeed, Defendant knew, or certainly should have known, of the recent and high-profile data breaches in the health care industry: UnityPoint Health, Lifetime Healthcare, Inc., Community Health Systems, Kalispell Regional Healthcare, Anthem, Premera Blue Cross, and many others.[15]

45.     In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data, including recent cases concerning health-related information against LabMD, Inc., SkyMed International, Inc., and others. The FTC publicized these enforcement actions to place companies like Defendant on notice of their obligation to safeguard customer and patient information.[16]

46.     Given the nature of Defendant's Data Breach, as well as the length of the time Defendant's networks were breached and the long delay in notification to victims thereof, it is

---

[12] Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html.
[13] *Id.*
[14] *Id.*
[15] *See, e.g., Healthcare Data Breach Statistics*, HIPAA Journal, available at: https://www.hipaajournal.com/healthcare-data-breach-statistics.
[16] *See, e.g., In the Matter of SKYMED INTERNATIONAL, INC.*, C-4732, 1923140 (F.T.C. Jan. 26, 2021).

foreseeable that the compromised Private Information has been or will be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Plaintiff's and Class members' Private Information can easily commit identity and medical theft using Plaintiff's and Class Members' Private Information.

47.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because credit card victims can cancel or close credit and debit card accounts.[17] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change.

48.     To date, Defendant has offered its consumers only limited identity theft monitoring services. The services offered are inadequate to protect Plaintiff and Class members from the threats they will face for years to come, particularly in light of the Private Information at issue here.

49.     Despite the prevalence of public announcements of data breach and data security compromises, its own acknowledgment of the risks posed by data breaches, and its own acknowledgment of its duties to keep Private Information private and secure, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class members from misappropriation. As a result, the injuries to Plaintiff and Class members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for its current and former patients.

**E.     Guardant Had a Duty and Obligation to Protect Private Information**

50.     Defendant has an obligation to protect the Private Information belonging to Plaintiff and Class members. First, this obligation was mandated by government regulations and state laws, including HIPAA and FTC rules and regulations. Second, this obligation arose from industry

---

[17] *See* Jesse Damiani, *Your Social Security Number Costs $4 On The Dark Web, New Report Finds*, Forbes (Mar 25, 2020), available at https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1. *See also Why Your Social Security Number Isn't as Valuable as Your Login Credentials*, Identity Theft Resource Center (June 18, 2021), available at https://www.idtheftcenter.org/post/why-your-social-security-number-isnt-as-valuable-as-your-login-credentials/.

standards regarding the handling of sensitive PII and medical records. Third, Defendant imposed such an obligation on itself with its promises regarding the safe handling of data. Plaintiff and Class members provided, and Defendant obtained, their information on the understanding that it would be protected and safeguarded from unauthorized access or disclosure.

### 1.    **HIPAA Requirements and Violation**

51.    HIPAA requires, *inter alia*, that Covered Entities and Business Associates implement and maintain policies, procedures, systems and safeguards that ensure the confidentiality and integrity of consumer and patient PII and PHI, protect against any reasonably anticipated threats or hazards to the security or integrity of consumer and patient PII and PHI, regularly review access to data bases containing protected information, and implement procedures and systems to detect, contain, and correct any unauthorized access to protected information. *See* 45 CFR § 164.302, *et seq.*

52.    HIPAA, as applied through federal regulations, also requires private information to be stored in a manner that renders it, "unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology. . . ." 45 CFR § 164.402.

53.    Defendant failed to implement and/or maintain procedures, systems, and safeguards to protect the Private Information belonging to Plaintiff and Class members from unauthorized access and disclosure.

54.    Upon information and belief, Defendant's security failures include, but are not limited to:

a.    Failing to maintain an adequate data security practices to prevent unauthorized disclosure of Private Information;

b.    Failing to mitigate the risks of a data breach and loss of data;

c.    Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.    Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.     Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f.     Failing to identify and respond to suspected or known security incidents;

g.     Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.     Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i.     Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.     Failing to ensure compliance with HIPAA security standard rules by Defendant's workforce, in violation of 45 CFR 164.306(a)(94); and

k.     Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

55.     Upon information and belief, Defendant also failed to store the information it collected in a manner that rendered it, "unusable, unreadable, or indecipherable to unauthorized persons," in violation of 45 CFR § 164.402.

## 2.     **FTC Act Requirements and Violations**

56.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

57.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and

practices for business.[18] The guidelines note businesses should protect the personal information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[19] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[20] Defendant clearly failed to do any of the foregoing, as evidenced by the length of the Data Breach, the fact that the Breach went undetected, and the amount of data exfiltrated.

58.    The FTC further recommends that companies not maintain private information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

59.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

60.    Additionally, the FTC Health Breach Notification Rule obligates companies that suffered a data breach to provide notice to every individual affected by the data breach, as well as notifying the media and the FTC. *See* 16 CFR 318.1, *et seq.*

61.    As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to

---

[18] *Protecting Personal Information: A Guide for Business*, Federal Trade Comm'n (October 2016), available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.
[19] *Id.*
[20] *Id.*

protect against unauthorized access to Plaintiff's and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

62.     Defendant was fully aware of its obligation to protect the Private Information of its current and former patients, including Plaintiff and Class members. Defendant is a sophisticated and technologically savvy business that relies extensively on technology systems and networks to maintain its practice, including storing its patients' personally identifiable information, protected health information, and medical information in order to operate its business.

63.     Defendant had and continues to have a duty to exercise reasonable care in collecting, storing, and protecting the Private Information from the foreseeable risk of a data breach. The duty arises out of the special relationship that exists between Defendant and Plaintiff and Class members. Defendant alone had the exclusive ability to implement adequate security measures to its cyber security network to secure and protect Plaintiff's and Class members' Private Information.

**3.     Industry Standards and Noncompliance**

64.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information that they collect and maintain.

65.     Some industry best practices that should be implemented by businesses dealing with sensitive Private Information, like Defendant, include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendant failed to follow some or all of these industry best practices.

66.     Other best cybersecurity practices that are standard in the industry include: monitoring and limiting network ports; protecting web browsers and email management systems; monitoring and protecting physical security systems; and training staff. As evidenced by the Data Breach, Defendant failed to follow these cybersecurity best practices.

67.     Defendant failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

**4.      Defendant's Own Stated Policies and Promises**

68.     Defendant's own published privacy policy states that: "The security of your Personal Data is important to us, which is why we maintain administrative, technical and physical safeguards designed to protect your information's security, confidentiality and integrity. These safeguards include, among other things, facility and data access control, password protection, security monitoring tools and protocols and the appointment of a Security Officer, a Privacy Officer and a Data Protection Officer who oversee and manage privacy and security."

69.     Defendant failed to live up to its own stated policies and promises with regards to data privacy and data security as cybercriminals were able to steal the Private Information belonging to Plaintiff and Class members.

**F.      Plaintiff and the Class Suffered Harm Resulting from the Data Breach**

70.     Like any data hack, the Data Breach presents major problems for all affected.[21]

71.     The FTC warns the public to pay particular attention to how they keep personally identifying information and other sensitive data. As the FTC notes, "once identity thieves have your personal information, they can drain your bank account, run up charges on your credit cards, open new utility accounts, or get medical treatment on your health insurance."[22]

72.     The ramifications of Defendant's failure to properly maintain as confidential Plaintiff's and Class members' Private Information are severe. Identity theft occurs when someone uses another person's medical and personal information without permission in order to commit fraud or other crimes.

73.     According to data security experts, one out of every four data breach notification recipients become a victim of identity fraud.

---

[21] Paige Schaffer, *Data Breaches' Impact on Consumers*, Insurance Thought Leadership (July 29, 2021), available at https://www.insurancethoughtleadership.com/cyber/data-breaches-impact-consumers.
[22] *Warning Signs of Identity Theft*, Federal Trade Comm'n, available at https://www.identitytheft.gov/#/Warning-Signs-of-Identity-Theft.

74.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.

75.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiff and the Class at an imminent, immediate, and continuing increased risk of identity theft and identity fraud. According to a recent study published in the scholarly journal *Preventive Medicine Reports*, public and corporate data breaches correlate to an increased risk of identity theft for victimized consumers.[23] The same study also found that identity theft is a deeply traumatic event for the victims, with more than a quarter of victims still experiencing sleep problems, anxiety, and irritation even six months after the crime.[24]

76.     There is also a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported. Even data that has not yet been exploited by cybercriminals presents a concrete risk that the cybercriminals who now possess Class members' Private Information will do so at a later date or re-sell it.

77.     Data breaches have also proven to be costly for affected organizations as well, with the average cost to resolve being $4.45 million dollars in 2023.[25] The average cost to resolve a data breach involving health information, however, is more than double this figure at $10.92 million.[26]

78.     The theft of medical information, beyond the theft of more traditional forms off PII, is especially harmful for victims. Medical identity theft, the misuse of stolen medical records and information, has seen a seven-fold increase over the last five years and this explosive growth far

---

[23] David Burnes, Marguerite DeLiema, Lynn Langton, *Risk and protective factors of identity theft victimization in the United States*, Preventive Medicine Reports, Volume 17 (January 23, 2020), available at https://www.sciencedirect.com/science/article/pii/S2211335520300188?via%3Dihub.

[24] *Id.*

[25] *Cost of a Data Breach Report 2023*, IBM Security, available at https://www.ibm.com/reports/data-breach?utm_content=SRCWW&p1=Search&p4=43700072379268622&p5=p&gclid=CjwKCAjwxOymBhAFEiwAnodBLGiGtWfjX0vRlNbx6p9BpWaOo9eZY1i6AMAc6t9S8IKsxdnbBVeUbxoCtk8QAvD_BwE&gclsrc=aw.ds.

[26] *Id.*

outstrips the increase in incidence of traditional identity theft.[27] Medical Identity Theft is especially nasty for victims because of the lack of laws that limit a victim's liabilities and damages from this type of identity theft (*e.g.*, a victim's liability for fraudulent credit card charges is capped at $50), the unalterable nature of medical information, the sheer costs involved in resolving the fallout from a medical identity theft (victims spend, on average, $13,500 to resolve problems arising from this crime), and the risk of criminal prosecution under anti-drug laws.[28]

79.    In response to the Data Breach, Defendant failed to provide victims with any identity protection services.

80.    Here, due to the Breach, Plaintiff and Class members have been exposed to injuries that include, but are not limited to:

a.    Theft of Private Information;

b.    Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Private Information stolen during the Data Breach;

c.    Damages arising from the inability to use accounts that may have been compromised during the Data Breach;

d.    Costs associated with time spent to address and mitigate the actual and future consequences of the Data Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, placing freezes and alerts on their credit reports, contacting their financial institutions to notify them that their personal information was exposed and to dispute fraudulent charges, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Data Breach, if they were fortunate enough to learn of the Data Breach despite Defendant's delay in disseminating notice in accordance with state law;

e.    The imminent and impending injury resulting from potential fraud and identity theft posed because their Private Information is exposed for theft and sale on the dark web; and

f.    The loss of Plaintiff's and Class members' privacy.

---

[27] Medical Identity Theft, AARP (March 25, 2022), available at: https://www.aarp.org/money/scams-fraud/info-2019/medical-identity-theft.html.
[28] *Id.*

81.    Plaintiff and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information being accessed by cybercriminals. These risks are continuous and ongoing throughout Plaintiff and Class Members' lives.

82.    As a direct and proximate result of Defendant's acts and omissions in failing to protect and secure Private Information, Plaintiff and Class members have been placed at a substantial risk of harm in the form of identity theft, and they have incurred and will incur actual damages in an attempt to prevent identity theft.

83.    Plaintiff retains an interest in ensuring there are no future breaches, in addition to seeking a remedy for the harms suffered as a result of the Data Breach on behalf of both themselves and similarly situated individuals whose Private Information was accessed in the Data Breach.

## G.    EXPERIENCES SPECIFIC TO PLAINTIFF

### *Paul Howard*

84.    Plaintiff Howard is an oncology patient. Plaintiff Howard's oncologist over the last four years uses Guardant for oncology related testing and screening.

85.    Plaintiff Howard received Guardant's data breach notice. The notice informed Plaintiff Howard that his Private Information was improperly accessed and obtained by third parties.

86.    After the breach, Plaintiff Howard received an increase in suspicious calls, emails, and text messages.

87.    As a result of the Data Breach, Plaintiff Howard has made reasonable efforts to mitigate the impact of the Data Breach, including, but not limited to, researching the Data Breach and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff Howard has also spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities, including, but not limited to, work and recreation.

88.    As a result of the Data Breach, Plaintiff Howard has suffered anxiety due to the public dissemination of his personal information, which he believed would be protected from

unauthorized access and disclosure, including anxiety about unauthorized parties viewing, selling, and using his Private Information for purposes of identity theft and fraud. Plaintiff Howard is concerned about identity theft and fraud, as well as the consequences of such identity theft and fraud resulting from the Data Breach.

89.     Plaintiff Howard suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to (a) damage to and diminution in the value of his Private Information, a form of property that Defendant obtained from her; (b) violation of his privacy rights; and (c) present, imminent and impending injury arising from the increased risk of identity theft and fraud.

90.     As a result of the Data Breach, Howard anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach. And, as a result of the Data Breach he is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

## V.     CLASS REPRESENTATION ALLEGATIONS

91.     Plaintiff brings this action on behalf of himself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States whose Private Information was accessed in the Data Breach.

Excluded from the Class are Defendant, its executives and officers, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition after conducting discovery.

92.     In the alternative, Plaintiff brings this action on behalf of himself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a subclass of:

> All persons who are residents of the State of New York whose Private Information was accessed in the Data Breach (the "New York Subclass").

Excluded from the Subclass are Defendant, its executives and officers, and the Judge(s) assigned to this case.

93.     <u>Numerosity</u>: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. The exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. On information and belief, the number of affected individuals estimated to be 9,309.[29] The members of the Class will be identifiable through information and records in Defendant's possession, custody, and control.

94.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.    When Defendant learned of the Data Breach;

    b.    Whether unauthorized actors obtained Class members' Private Information via the Data Breach;

    c.    Whether Defendant's response to the Data Breach was adequate;

    d.    Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

    e.    Whether Defendant knew or should have known that its data security systems and monitoring processes were deficient;

    f.    Whether Defendant owed a duty to safeguard their Private Information;

    g.    Whether Defendant breached its duty to safeguard Private Information;

    h.    Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

    i.    Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

    j.    Whether Defendant's conduct violated the FTCA, HIPAA, and/or the Consumer Protection Act invoked herein;

    k.    Whether Defendant's conduct was negligent;

---

[29] U.S. Department of Health & Human Services - Office for Civil Rights (hhs.gov) (last accessed May 24, 2024).

l.      Whether Defendant's conduct was *per se* negligent;

m.     Whether Defendant was unjustly enriched;

n.      What damages Plaintiff and Class members suffered as a result of Defendant's misconduct;

o.      Whether Plaintiff and Class members are entitled to actual and/or statutory damages; and

p.      Whether Plaintiff and Class members are entitled to additional credit or identity monitoring and monetary relief.

95.     <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class as Plaintiff and all members of the Class had their Private Information compromised in the Data Breach. Plaintiff's claims and damages are also typical of the Class because they resulted from Defendant's uniform wrongful conduct. Likewise, the relief to which Plaintiff is entitled to is typical of the Class because Defendant has acted, and refused to act, on grounds generally applicable to the Class.

96.     <u>Adequacy</u>: Plaintiff is an adequate class representatives because Plaintiff's interests do not materially or irreconcilably conflict with the interests of the Class that Plaintiff seeks to represent, Plaintiff has retained counsel competent and highly experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff and counsel will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that are antagonistic to the interests of other members of the Class.

97.     <u>Superiority</u>: Compared to all other available means of fair and efficient adjudication of the claims of Plaintiff and the Class, a class action is superior. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action

device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

### VI.    CAUSES OF ACTION
### COUNT I
### NEGLIGENCE
**(By Plaintiff on behalf of the Class)**

98.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

99.    Defendant owes a duty of care to protect the Private Information belonging to Plaintiff and Class members. Defendant also owes several specific duties including, but not limited to, the duty:

a.    to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

b.    to protect patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

c.    to have procedures in place to detect the unauthorized dissemination of Private Information;

d.    to employ reasonable security measures and otherwise protect the Private Information of Plaintiff and Class members pursuant to the FTCA;

e.    to implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

f.    to promptly notify Plaintiff and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

100.    Defendant owes this duty because it had a special relationship with Plaintiff's and Class members. Plaintiff and Class members entrusted their Private Information to Defendant on the understanding that adequate security precautions would be taken to protect this information. Furthermore, only Defendant had the ability to protect the Private Information stored its systems from unauthorized disclosure.

101.    Defendant also owes this duty because industry standards mandate that Defendant protect the confidentiality of patients' Private Information.

102.    Defendant also owes a duty to timely disclose any unauthorized access and/or disclosure of the Private Information belonging to Plaintiff and Class members. This duty exists to provide Plaintiff and Class members with the opportunity to undertake appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their Private Information.

103.    Defendant breached its duties owed to Plaintiff and Class members by failing to take reasonable appropriate measures to secure, protect, and/or otherwise safeguard their Private Information.

104.    Defendant also breached the duties it owed to Plaintiff and Class members by failing to timely and accurately disclose to them that their Private Information had been improperly acquired and/or accessed.

105.    As a direct and proximate result of Defendant's conduct, Plaintiff and Class members were damaged. These damages include, and are not limited to:

- Lost or diminished value of their Private Information;

- Out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information;

- Lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to the loss of time needed to take appropriate measures to avoid unauthorized and fraudulent charges; and

- Permanent increased risk of identity theft.

106.    Plaintiff and Class members were foreseeable victims of any inadequate security practices on the part of Defendant and the damages they suffered were the foreseeable result of the aforementioned inadequate security practices.

107.    In failing to provide prompt and adequate individual notice of the Data Breach, Defendant also acted with reckless disregard for the rights of Plaintiff and Class members.

108.    Plaintiff and the Class are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and

monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(By Plaintiff on behalf of the Class)**

109.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

110.    Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, imposes a duty on Defendant to provide fair and adequate data security to secure, protect, and/or otherwise safeguard the Private Information of Plaintiff and Class members.

111.    HIPAA imposes a duty on Defendant to implement reasonable safeguards to protect Plaintiff's and Class members' Private Information. 42 U.S.C. § 1302(d), *et seq*.

112.    HIPAA also requires Defendant to render unusable, unreadable, or indecipherable all Private Information it collected. Defendant was required to do so through "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

113.    Defendant violated the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to secure, protect, and/or otherwise safeguard Plaintiff's and Class members' Private Information.

114.    Defendant violated HIPAA by failing to properly encrypt the Private Information it collected.

115.    Defendant's failure to comply with HIPAA and the FTCA constitutes negligence *per se*.

116.    Plaintiff and Class members are within the class of persons that the FTCA and HIPAA are intended to protect.

117.    It was reasonably foreseeable that the failure to protect and secure Plaintiff's and Class members' Private Information in compliance with applicable laws and industry standards would result in that Information being accessed and stolen by unauthorized actors.

118.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to theft of their personal information, damages from the lost time and effort to mitigate the impact of the Data Breach, and permanently increased risk of identity theft.

119.    Plaintiff and Class members are entitled to damages in an amount to be proven at trial and injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiff and Class members.

**COUNT III**
**UNJUST ENRICHMENT**
**(By Plaintiff on behalf of the Class)**

120.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

121.    Plaintiff and the Class have a legal and equitable interest in their Private Information that was collected and maintained by Defendant.

122.    Defendant was benefitted by the conferral of Plaintiff's and Class members' Private Information and by its ability to retain and use that information. Defendant understood that it was in fact so benefitted.

123.    Defendant also understood and appreciated that Plaintiff's and Class members' Private Information was private and confidential and its value depended upon Defendant maintaining the privacy and confidentiality of that information.

124.    But for Defendant's willingness and commitment to maintain its privacy and confidentiality, Plaintiff and Class members would not have provided or authorized their Private Information to be provided to Defendant, and Defendant would have been deprived of the competitive and economic advantages it enjoyed by falsely claiming that its data-security practices met reasonable standards. These competitive and economic advantages include, without limitation, wrongfully gaining patients, gaining the reputational advantages conferred upon it by Plaintiff and Class members, collecting excessive advertising and sales revenues as described herein, monetary

savings resulting from failure to reasonably upgrade and maintain data technology infrastructures, staffing, and expertise raising investment capital as described herein, and realizing excessive profits.

125.    As a result of Defendant's wrongful conduct as alleged herein (including, among other things, its deception of Plaintiff, the Class, and the public relating to the nature and scope of the data breach; its failure to employ adequate data security measures; its continued maintenance and use of the Private Information belonging to Plaintiff and Class members without having adequate data security measures; and its other conduct facilitating the theft of that Private Information), Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the Class.

126.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiff's and Class members' sensitive Private Information, while at the same time failing to maintain that information secure from intrusion.

127.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiff and Class members in an unfair and unconscionable manner.

128.    The benefit conferred upon, received, and enjoyed by Defendant was not conferred officiously or gratuitously, and it would be inequitable and unjust for Defendant to retain the benefit.

129.    Defendant is therefore liable to Plaintiff and the Class for restitution in the amount of the benefit conferred on Defendant as a result of its wrongful conduct, including specifically the value to Defendant of the PII and medical information that was accessed and exfiltrated in the Data Breach and the profits Defendant receives from the use and sale of that information.

130.    Plaintiff and Class members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

131.    Plaintiff and Class members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT IV**
**INVASION OF PRIVACY**
**(By Plaintiff on behalf of the Class)**

132.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

133.    Plaintiff and Class members had a reasonable expectation of privacy in the Private Information that Defendant possessed and/or continues to possess.

134.    By failing to keep Plaintiff's and Class members' Private Information safe, and by misusing and/or disclosing their Private Information to unauthorized parties for unauthorized use, Defendant invaded Plaintiff's and Class members' privacy by:

        a.    Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

        b.    Publicizing private facts about Plaintiff and Class members, which is highly offensive to a reasonable person.

135.    Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's position would consider Defendant's actions highly offensive.

136.    Defendant invaded Plaintiff's and Class members' right to privacy and intruded into Plaintiff's and Class members' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

137.    As a proximate result of such misuse and disclosures, Plaintiff's and Class members' reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's and Class members' protected privacy interests.

138.    In failing to protect Plaintiff's and Class members' Private Information, and in misusing and/or disclosing their Private Information, Defendant has acted with malice and oppression and in conscious disregard of Plaintiff's and Class members' rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing its

own economic, corporate, and legal interests above the privacy interests of its millions of patients. Plaintiff, therefore, seeks an award of damages, including punitive damages, individually and on behalf of the Class.

**COUNT V**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
**(By Plaintiff on behalf of the New York Subclass)**

139.    Plaintiff restates and realleges the allegations in every preceding paragraph as if fully set forth herein.

140.    New York General Business Law ("NYGBL") § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of New York.

141.    By reason of the conduct alleged herein, Defendant engaged in unlawful practices within the meaning of NYGBL § 349. The conduct alleged herein is a "business practice" within the meaning of NYGBL § 349, and the deception occurred within New York State.

142.    Defendant stored Plaintiff's and Subclass Members' Private Information in Defendant's electronic databases. Defendant knew or should have known it did not employ reasonable, industry standard, and appropriate security measures that complied with all relevant regulations and would have kept Plaintiff's and Subclass Members' Private Information secure and prevented the unauthorized disclosure of that Private Information. Defendant did not disclose to Plaintiff and Subclass Members that its data practices were not adequate.

143.    Plaintiff and Subclass Members would not have provided their Private Information or permitted their Private Information to be provided to Defendant if they had been told or knew that Defendant failed to maintain sufficient data security practices, and its inability to maintain Plaintiff's and Subclass Members' Private Information as confidential.

144.    As alleged herein, Defendant engaged in the unfair or deceptive acts or practices in the conduct of consumer transactions in violation of N.Y. Gen. Bus. Law § 349, including but not limited to:

        a.    Representing that its services were of a particular standard or quality that it knew or should have known were of another;

b.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Subclass Members' Private Information, which was a direct and proximate cause of the Data Breach;

c.  Failing to identify foreseeable security and privacy risks, and remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;

d.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass Members' Private Information, including duties imposed by the FTCA, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

e.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Subclass Members' Private Information, including by implementing and maintaining reasonable security measures;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Subclass Members' Private Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Subclass Members' Private Information, including duties imposed by the FTCA, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach.

145.   Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' Private Information.

146.   Such acts by Defendant are and were deceptive acts or practices which are and/or were likely to mislead a reasonable consumer providing his or her Private Information to Defendant. Said deceptive acts and practices are material. The requests for and use of such Private Information through deceptive means were consumer-oriented acts and thereby fall under the New York consumer fraud statute, NYGBL § 349.

147.   In addition, Defendant's failure to secure its customers' Private Information violated the FTCA and therefore violates N.Y. Gen. Bus. Law § 349.

148.   Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the Private Information of Plaintiff and Subclass Members,

and detect the unauthorized disclosure of Private Information within a reasonable time, and that the risk of a data breach was highly likely.

149.    The aforesaid conduct violated N.Y. Gen. Bus. Law § 349, in that it is a restraint on trade or commerce.

150.    Defendant's violations of N.Y. Gen. Bus. Law § 349 has an impact and general importance to the public, including the people of New York. Hundreds of New Yorkers have had their Private Information stored on Defendant's data systems, many of whom have been impacted by the Data Breach.

151.    In addition, New York residents have a strong interest in regulating the conduct of its healthcare industry, whose lax data security practices described herein have affected thousands of people across the country.

152.    As a direct and proximate result of these deceptive trade practices, Plaintiff and Subclass Members are entitled to judgment under N.Y. Gen. Bus. Law § 349, to enjoin further violations, to recover actual damages, treble damages, and other monetary relief, to recover the costs of this action (including reasonable attorneys' fees), and such other relief as the Court deems just and proper.

## COUNT VI
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §17200, *et seq.*
### (By Plaintiff on behalf of the Class)

153.    Plaintiff incorporate and reallege all allegations above as if fully set forth herein.

154.    The California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq.*, prohibits, *inter alia*, "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

155.    Defendant engaged in unlawful, unfair, and fraudulent business acts or practices in violation of the UCL.

156.    Defendant's acts, omissions, and conduct were "unlawful" because they violated the FTC Act, HIPAA, and were negligent.

157.    Defendant's acts, omissions, and conduct were "unfair" because they offend public policy and constitute immoral, unethical, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class members. The gravity of harm resulting from Defendant's conduct outweighs any potential benefits attributable to the conduct and there were reasonably available alternatives to further Defendant's legitimate business interests. Defendant's unfair acts and practices include, but are not limited to:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' Private Information, which was a direct and proximate cause of the Data Breach;

b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents in the industry, which were direct and proximate causes of the Data Breach;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' Private Information, including but not limited to duties imposed by HIPAA, and the FTC Act, which were direct and proximate causes of the Data Breach;

d.    Misrepresenting that Defendant would protect the privacy and confidentiality of Plaintiff's and Class members' Private Information, including by implementing and maintaining reasonable data practices;

e.    Misrepresenting that Defendant would comply with common law, statutory, and self-imposed duties pertaining to the security and privacy of Plaintiff's and the Class members' Private Information;

f.    Omitting, suppressing, and concealing the material fact that Defendant did not reasonably or adequately secure Plaintiff's and Class members' Private Information;

g.    Omitting, suppressing, and concealing the material fact that Defendant did not comply with common law, statutory, and self-imposed duties pertaining

to the security and privacy of Plaintiff's and Class members' Private Information; and

      h.    Failing to promptly and adequately notify Plaintiff and Class members that their Private Information was accessed by unauthorized persons in the Data Breach.

158.    Defendant engaged in fraudulent business practices by making material misrepresentations and by failing to disclose material information regarding Defendant's deficient security policies and practices, the security of the Private Information of Plaintiff and Class members, and the Data Breach.

159.    Defendant had exclusive knowledge of material information regarding its deficient security policies and practices, and regarding the security of the Private Information of Plaintiff and Class members. This exclusive knowledge includes, but is not limited to, information that Defendant received through internal and other non-public audits and that the Private Information of Plaintiff and Class members is sensitive and highly valuable.

160.    Defendant also had exclusive knowledge about the extent of the Data Breach, including during the days, weeks, and months following the Data Breach.

161.    Defendant also had exclusive knowledge about the length of time that it maintained former patients' Private Information.

162.    Defendant failed to disclose the material information it had regarding its deficient security policies and practices, and regarding the security of the Private Information of Plaintiff and Class members. For example, even though Defendant has long known that its security policies and practices were substandard and deficient, and that the Private Information of Plaintiff and Class members was vulnerable as a result, Defendant failed to disclose this information to Plaintiff and Class members. Likewise, during the days and weeks following the Data Breach, Defendant failed to disclose information that it had regarding the extent and nature of the Data Breach.

163.    Defendant had a duty to disclose the material information that it had because, *inter alia*, it had exclusive knowledge of the information, actively concealed the information, and because Defendant was in a fiduciary position by virtue of the fact that Defendant collected and

maintained Plaintiff's and Class members' personally identifiable information and protected health information.

164.    Defendant's representations and omissions were material because they were likely to deceive reasonable individuals about the adequacy of Defendant's data security and its ability to protect the confidentiality of current and former patients' Private Information.

165.    Had Defendants disclosed to Plaintiff and Class members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business as medical groups without adopting reasonable data security measures and complying with the law. Instead, Defendant received, maintained, and compiled Plaintiff's and Class members' Private Information without advising them that Defendant's data security practices were insufficient to maintain the safety and confidentiality of their Private Information. Accordingly, Plaintiff and the Class members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

166.    Defendant's practices were also contrary to legislatively declared and public policies that seek to protect data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected in laws like the FTC Act.

167.    The injuries suffered by Plaintiff and Class members greatly outweigh any potential countervailing benefit to consumers or to competition, and are not injuries that Plaintiff and Class members should have reasonably avoided.

168.    The damages, ascertainable losses and injuries, including to their money or property, suffered by Plaintiff and Class members as a direct result of Defendant's unlawful, unfair, and fraudulent acts and practices as set forth in this Complaint include, without limitation:

  a. unauthorized charges on their debit and credit card accounts;

  b. theft of their PII;

  c. costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

  d. loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of

money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse effects on their credit scores and adverse credit notations;

e.  costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Data Breach, including without limitation finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

f.  the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

g.  damages to and diminution in value of their personal information entrusted to Defendants, and with the understanding that Defendants would safeguard their data against theft and not allow access and misuse of their data by others; and

h.  the continued risk to their PII, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect data in their possession.

169.    Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Defendants from disclosing their PII without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

### COUNT VII
### VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
**Cal. Civ. Code §§ 1750, *et seq.***
**(By Plaintiff on behalf of the Class)**

170.    Plaintiff incorporates and realleges all allegations above as if fully set forth herein.

171.    The Consumers Legal Remedies Act("CLRA"), Cal. Civ. Code § 1750, *et seq.*, is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct of businesses providing goods, property or services to consumers primarily for personal, family, or household use.

172.    Defendant is a "person" as defined by Civil Code §§ 1761(c) and 1770, and has provided "services" as defined by Civil Code §§ 1761(b) and 1770.

173.    Civil Code section 1770, subdivision (a)(5) prohibits one who is involved in a transaction from "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have."

174.    Civil Code section 1770, subdivision (a)(7) prohibits one who is involved in a transaction from "[r]epresenting that goods or services are of a particular standard, quality, or grade . . . if they are of another."

175.    Plaintiff and the Class "consumer[s]" as defined by Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" as defined by Civil Code §§ 1761(e) and 1770.

176.    Defendant's acts and practices were intended to and did result in the sales of services to Plaintiff and Class members in violation of Civil Code § 1770, including, but not limited to, the following:

a.    Representing that goods or services have characteristics that they do not have;

b.    Representing that goods or services are of a particular standard, quality, or grade when they were not;

c.    Advertising goods or services with intent not to sell them as advertised;

d.    Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

160.    Defendant's representations and omissions were material because they were likely to and did deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of Plaintiff's and Class members' Private Information.

161.    Had the Defendant disclosed to Plaintiff and Class members that its data security practices were inadequate to protect the confidentiality of their Private Information, Defendant would have been unable to continue in business and would have been forced to adopt reasonable data security measures and comply with the law. Instead, the Defendant received, maintained, and compiled Plaintiff's and Class members' Private Information as part of the services Defendant provided and for which Plaintiff and Class members paid without advising Plaintiff and Class members that Defendant's data security practices were insufficient to maintain the safety and confidentiality of their Private Information. Accordingly, Plaintiff and Class members acted reasonably in relying on the Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

162.    As a direct and proximate result of the Defendant's violations of California Civil Code § 1770, Plaintiff and Class members members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including loss of the benefit of their bargain with and overcharges Defendant as they would not have paid Defendant for services or would have paid less for such services but for the violations alleged herein; losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their Private Information; and an increased, imminent risk of fraud and identity theft.

163.    Plaintiff and the Class seek all non-monetary relief allowed by law, including an order enjoining the acts and practices described above, attorneys' fees, and costs under the CLRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all members of the Class, respectfully requests that the Court enter judgment in their favor and against Defendant, as follows:

A.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representatives; and appoint Plaintiff's Counsel as Class Counsel;

B.    That Plaintiff be granted the declaratory relief sought herein;

C.     That the Court grant permanent injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein;

D.     That the Court award Plaintiff and Class members compensatory, consequential, and general damages in an amount to be determined at trial;

E.     That the Court award Plaintiff and Class members statutory damages, and punitive or exemplary damages, to the extent permitted by law;

F.     That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

G.     That the Court award pre- and post-judgment interest at the maximum legal rate;

H.     That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution; and

I.     That the Court grant all other relief as it deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the putative Class, demands a trial by jury on all issues so triable.

Date: June 3, 2024                          Respectfully Submitted,

/s/_____
DANIEL J. MULLER, SBN 193396
dmuller@venturahersey.com
**VENTURA HERSEY & MULLER, LLP**
1506 Hamilton Avenue
San Jose, California 95125
Telephone: (408) 512-3022
Facsimile: (408) 512-3023
dmuller@venturahersey.com

Daniel O. Herrera*
Nickolas J. Hagman*
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com
* *Pro Hac Vice* forthcoming
*Attorneys for Plaintiff and the Proposed Class*